**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ELIZABETH STEGALL LOWE,<br><br>    Plaintiff,<br><br>                v.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>    Defendant. | Civil Action No.<br>1:17-cv-02070-SDG |

**ORDER**

This matter is before the Court on Defendant Transamerica Life Insurance Company's motion for summary judgment [ECF 32] and Plaintiff Elizabeth Stegall Lowe's motion for summary judgment [ECF 39]. For the following reasons, Transamerica's motion is **GRANTED** and Lowe's motion is **DENIED**.

**I.   BACKGROUND**

Unless otherwise noted, the following facts are not disputed by the parties or are supported by undisputed evidence in the record. In 1994, Lowe purchased a Flexible Premium Adjustable Life Insurance Policy, No. 47-9644790 ("Policy"), from Academy Life Insurance Company with a face value of $100,000.[1] After a

---

[1] ECF 32-4, at 51–53; ECF 32–5, ¶ 1. *See* ECF 33 (Lowe Dep. Tr. Ex. 5). All citations to the Policy itself refer to the version marked as Exhibit 5 to the Lowe deposition transcript.

series of corporate mergers, Transamerica acquired and began administering the Policy in 2008.[2]

The Policy includes a "flexible premium" whereby Lowe is permitted to pay an amount of her choosing in excess of $25 into an accumulation account.[3] The Policy then permits Transamerica to deduct the monthly charges for insuring Lowe out of the accumulation account.[4] The accumulation account is a percentage of the premiums paid in, plus accrued interest, minus the monthly deductions and any partial withdrawals.[5] To maintain coverage, the Policy required Lowe to pay a sufficient amount of premiums to cover each monthly deduction from the accumulation account.[6]

The Policy's monthly deduction rate ("MDR") is the amount Transamerica deducts from the accumulation account each month for Lowe's coverage.[7] The

---

[2] ECF 32-5, ¶ 2.

[3] *Id.* ¶ 3. For the purposes of this Order, the Court will not use the upper-case format employed for certain terms in the Policy. However, these terms shall retain the same meanings as used in the Policy. The accumulation account is also referred to in the Policy as the "accumulation value."

[4] *Id.*

[5] *Id.*

[6] *Id.* ¶ 5.

[7] *Id.* ¶ 6.

MDR includes the "risk premium," plus the premiums related to any riders and an expense charge set forth in the Policy schedule.[8] The "risk premium" is calculated with a specific formula involving a defined "mortality risk rate," which is multiplied by the difference between the death benefit and accumulation account.[9] The mortality risk rate is capped at maximum values set forth in the Policy.[10] The mortality risk rate naturally increases incrementally with age every year after an insured's 27th birthday.[11]

The Policy also permitted Lowe to make partial withdrawals from the accumulation account, which would, in turn, increase the risk premium.[12] On September 26, 2012, Lowe withdrew $3,120 from the $4,118.57 then-pending balance in the accumulation account, leaving less than $1,000 remaining in the account.[13] This partial withdrawal increased the Policy's risk premium.[14]

---

[8] *Id.*

[9] *Id.* ¶ 8.

[10] *Id.* ¶ 9.

[11] *Id.*

[12] *Id.* ¶ 15.

[13] *Id.* ¶ 17.

[14] *Id.* ¶ 18.

According to the Policy, if Lowe failed to maintain a sufficient amount of funds in the accumulation account to cover a monthly deduction, the Policy would enter a 61-day "grace period."[15] The Policy required Transamerica to send Lowe a notice at least thirty-one days before the end of the grace period.[16] If Lowe failed to replenish the accumulation account with sufficient funds during the grace period to keep the Policy in force, the Policy would lapse.[17] Within five years after the lapse of a grace period, Lowe could apply to reinstate the Policy if she provided Transamerica with evidence of insurability and paid a sufficient amount of money to cover all unpaid monthly deductions, plus one "planned periodic premium."[18]

On January 26, 2016, Lowe received the first notice from Transamerica that the accumulation account contained an insufficient amount of money to cover the monthly deduction due and her Policy had entered the grace period.[19] Although Lowe subsequently made a payment, on June 26, 2016, Lowe received a second notice from Transamerica that her Policy had once more entered the grace period

---

[15]  *Id.* ¶ 23.

[16]  *Id.*

[17]  *Id.* ¶ 24.

[18]  ECF 33 (Lowe Dep. Tr. Ex. 5), at 204.

[19]  ECF 33 (Lowe Dep. Tr. 102:2–103:10; 112:13–25).

due to a lack of funds.[20] Pursuant to this notice, Lowe made another payment to Transamerica.[21] Lowe's Policy did not lapse at the end of either of these two grace periods.

On November 16, 2016 and December 26, 2016, Lowe received two more notices that her account had again entered the grace period due to a lack of necessary funds.[22] Transamerica warned Lowe that her Policy would lapse on February 26, 2017 unless she replenished the accumulation account.[23] Despite these notices, Lowe did not make payments to replenish the account.[24] As such, Lowe's Policy lapsed on February 26, 2017.[25] Transamerica sent Lowe a notification memorializing this lapse.[26] Lowe did not apply to reinstate the Policy.[27]

---

[20] *Id*. at 102:11–112:25.

[21] *Id*. at 113:1–4.

[22] ECF 32-5, ¶ 25.

[23] ECF 33 (Lowe Dep. Tr. 115:21–25). *See also id*. at 292 (notice of grace period expiration).

[24] ECF 33-5, ¶ 26.

[25] *Id*. ¶ 27.

[26] *Id*.

[27] *Id*. ¶ 28.

On June 9, 2017, Lowe filed her Complaint, asserting a breach of contract claim against Transamerica.[28] Lowe also seeks an order directing Transamerica to stop increasing the MDR and requests a $1 million punitive damages award.[29] On November 2, 2018, Transamerica filed the instant motion for summary judgment.[30] Lowe filed her response on November 19, 2018.[31] Transamerica filed its reply on December 3, 2018.[32]

With Transamerica's motion for summary judgment pending, on December 31, 2018, Lowe filed a cross-motion for summary judgment on her claim.[33] On January 22, 2019, Transamerica filed its response.[34] Lowe did not file a reply.

## II.   LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the

---

[28]  ECF 4 (Complaint).

[29]  *Id.* at 5.

[30]  ECF 32.

[31]  ECF 36.

[32]  ECF 37.

[33]  ECF 39.

[34]  ECF 40; ECF 41.

lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must go beyond the pleadings and present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324. "After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (*citing* Fed. R. Civ. P. 56(c)).

In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477 U.S. at 255. *See also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). "Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions," and cannot be made by the district court. *Anderson*, 477 U.S. at 255. *See also Graham*, 193 F.3d at 1282. Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

An issue of "[i]nsurance policy interpretation is appropriately decided at summary judgment." *Auto-Owners Ins. Co. v. Cribb*, Civ. A. No. 2:17-cv-106-RWS, 2019 WL 451555, at *4 (N.D. Ga. Feb. 5, 2019) (*citing Giddens v. Equitable Life Assurance Soc'y of the U.S.*, 445 F.3d 1286, 1297 (11th Cir. 2006) ("[T]he interpretation of an insurance policy, including the determination and resolution of ambiguities, is a question of law for the court to decide.")). S*ee also* O.C.G.A. § 13-2-1 ("The construction of a contract is a question of law for the court."). The Court's mandate is to "ascertain the parties' intention by examining the contract as a whole." *Lyons v. Allstate Ins. Co.*, 996 F. Supp. 2d 1316, 1319 (N.D. Ga. 2014).

"In Georgia, ordinary rules of contract construction govern the interpretation of insurance policies." *Bituminous Cas. Corp. v. Advanced Adhesive Tech., Inc.*, 73 F.3d 335, 337 (11th Cir. 1996). "As is the case with all contracts, unambiguous terms of an insurance policy require no construction, and the plain

meaning of such terms must be given full effect, regardless of whether they might be beneficial to the insurer or detrimental to the insured." *Cont'l Cas. Co. v. H.S.I. Fin. Servs., Inc.*, 266 Ga. 260, 262 (1996). *See also Giddens*, 445 F.3d at 1297 ("Where the language of the contract is unambiguous and only one reasonable interpretation is possible, the contract must be enforced as written."); *Macon-Bibb Cty. Hosp. Auth. v. Cont'l Ins. Co.*, 196 Ga. App. 399, 401 (1990) ("The words used in policies of insurance . . . bear their usual and common significance, and policies of insurance are . . . to be construed in their ordinary meaning.") (internal citation omitted). Put another way, "a word or phrase is ambiguous only when it is of uncertain meaning, and may be fairly understood in more ways than one." *W. Pac. Mut. Ins. Co. v. Davies*, 267 Ga. App. 675, 680 (2004).

### III.   CHOICE OF LAW

"In diversity cases, the choice-of-law rules of the forum state determine what law governs." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013). For contract cases, "Georgia follows the traditional rule of *lex loci contractus*." *McGill v. Am. Trucking & Transp., Ins. Co.*, 77 F. Supp. 3d 1261, 1264 (N.D. Ga. 2015). Pursuant to this doctrine, "contracts are governed by the law of the place where they were 'made,' and an insurance contract is 'made' where it was delivered." *Id*. Here, it is undisputed that the Policy was "made" in Georgia

because it was issued and delivered to Lowe in that state.[35] Thus, the Court must apply Georgia's substantive law to Lowe's claims.

## IV. DISCUSSION

Transamerica requests the Court enter summary judgment on all of Lowe's claims. Lowe, conversely, seeks summary judgment solely on her breach of contract claim. Lowe's motion also asserts numerous new causes of action against Transamerica.

### a. Transamerica Is Entitled to Summary Judgment on Lowe's Breach of Contract Claim.

Lowe contends Transamerica breached the Policy by impermissibly increasing the MDR used to calculate the appropriate monthly deductions from the Policy's accumulation account. Lowe claims these increases caused the Policy to lapse. Transamerica argues it simply increased the MDR in conformity with the Policy's terms.

In Georgia, "[t]he essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015).

---

[35] ECF 32, at 12.

The parties do not dispute that the Policy is a valid contract existing between Lowe and Transamerica. The issue is whether Transamerica has breached the Policy.

A contracting party breaches a contract if it "repudiates or renounces liability under the contract; fails to perform the engagement as specified in the contract; or does some act that renders performance impossible." *UWork.com, Inc. v. Paragon Techns., Inc.*, 321 Ga. App. 584, 590 (2013). Under Georgia law, [i]nsurance is a matter of contract and the parties are bound by the terms of the policy." *Tucker v. State Farm Mut. Auto. Ins. Co.*, 109 F. Supp. 3d 1350, 1352 (N.D. Ga. 2015) (*citing Richmond v. Georgia Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 221 (1976)). A contracting party's ignorance of a contract's terms is not recognized as a basis for a breach of contract claim because "one who signs a contract is presumed to know its contents." *Jaycee Atl. Dev., LLC v. Providence Bank*, 330 Ga. App. 322, 328 (2014). Instead, an insured "is chargeable with knowledge of all the conditions imposed upon him by the terms of his policy." *Tucker*, 109 F. Supp. 3d. at 1352. Parties to insurance contracts "are presumed to have read their provisions and to have understood the contents." *Payne v. Middlesex Ins. Co.*, 259 Ga. App. 867, 868 (2003) (*citing O'Brien Family Trust v. Glen Falls Ins. Co.*, 218 Ga. App. 379, 382 (1995)).

Lowe's claim fails because she does not present evidence that Transamerica breached the Policy. The Policy's terms are clear and unambiguous. The MDR is calculated based on "the risk premium plus the premiums for benefits provided to supplemental riders plus the expense charge shown in the policy schedule."[36] The risk premium is equal to:

> (1) The actual mortality risk rate described in the policy schedule; times (2) the difference between: (a) the death benefit at the beginning of the Policy month, divided by the sum of one plus the guaranteed monthly interest rate; and (b) the accumulation value at the beginning of the Policy month before subtracting the risk premium; (c) divided by $1000.[37]

The Policy contains a chart laying out the maximum mortality risk rate, which incrementally increases with age for every year after the age of twenty-seven.[38] Since the mortality risk rate factors into the risk premium, which factors into the MDR, the MDR naturally increases each year.

The record shows that Transamerica did not act inconsistently with the Policy's terms. Transamerica presents evidence that the monthly deductions it

---

[36] ECF 33, at 206.

[37] *Id.* at 207.

[38] *Id.* at 210.

applied to Lowe's Policy tracked the increases permitted by the Policy.[39] Beginning in 2002, Transamerica increased the risk premium anywhere from 8.5% to 9.9% every year.[40] These increases never exceeded the maximum 10% limit in the Policy.[41] As the insured, Lowe was responsible for reading and understanding this calculation. Notably, Lowe acknowledged that she understood her risk premium would increase with age.[42] Lowe also concedes she has no evidence Transamerica breached the Policy by charging more than the guaranteed maximum risk premium allowed in the Policy.[43] Instead, Lowe concedes she expected to pay 10% per year in additional premiums, though in reality her risk premium increased at a lower percentage than that each year.[44]

Rather than misfeasance by Transamerica, the record demonstrates Lowe's life insurance Policy lapsed due to her own failure to manage her account and pay sufficient premiums to keep the Policy in force. Pursuant to the Policy's flexible premium, Lowe shouldered the burden of maintaining sufficient funds in the

---

[39] ECF 32-1, ¶¶ 3, 8.

[40] ECF 33 (Lowe Dep. Tr. Ex. 9), at 227–52.

[41] *Id.*

[42] *Id.* at 21.

[43] ECF 33 (Lowe Dep. Tr. 69:7–23).

[44] *Id.* at 66:1-3. *See also id.* (Ex. 9) at 227–52.

accumulation account to cover the reoccurring monthly deductions.[45] Lowe substantially reduced her account by making a significant partial withdrawal on September 26, 2012.[46] On January 26, 2016, Transamerica first notified Lowe that her accumulation account contained an insufficient amount to cover the monthly deductions, and her Policy had entered a grace period.[47] Over the next year, Lowe received at least four notices from Transamerica that her account had entered a grace period—and was thus subject to lapse—due to insufficient funds.[48] Lowe concedes she knew her Policy was set to lapse on February 26, 2017, but did not make the payment necessary to keep the Policy in force.[49] According to Lowe, she "didn't have the money on hand" to make the payment.[50] After its lapse, Lowe did not apply to reinstate the Policy.[51] Therefore, the Policy lapsed by its own terms based on Lowe's failure to make the required payments.

---

[45]  ECF 33, at 203.

[46]  ECF 32-5, ¶ 13.

[47]  ECF 33 (Lowe Dep. Tr. 102:2–103:10; 112:13–25).

[48]  ECF 32-5, ¶ 25.

[49]  ECF 33 (Lowe Dep. Tr. 114:7–116:6).

[50]  *Id.*

[51]  *Id.* at 120:11–12.

The Policy also included a Retirement/Premium Deposit Fund that is separate from the life insurance Policy's accumulation account, with each containing a separate balance.[52] In her response to Transamerica's summary judgment motion, Lowe alleges the company misplaced and mismanaged funds in her separate retirement account.[53] Lowe cites instances involving: (1) $20,000 in "misplaced" funds; (2) $5,563 in "unauthorized" funds; and (3) $2,323.97 in "discovered" funds.[54] According to Lowe, Transamerica's errors caused her life insurance Policy to lapse.[55] Lowe's allegations regarding her retirement account, however, are wholly irrelevant to her life insurance benefits. Lowe points to no evidence that any of these transactions affected her life insurance Policy. In short, Lowe's allegations regarding the mismanagement of her retirement account, irrespective of their truth, are wholly irrelevant and cannot prove a breach of the Policy.[56]

---

[52] ECF 32-5, ¶ 29; ECF 36-1, at 21–24.

[53] ECF 36, at 2.

[54] *Id.*

[55] *Id.*

[56] The Court notes that Transamerica presents evidence it claims shows that it properly managed Lowe's retirement account [ECF 37, at 6-7]. Since Lowe's allegations are irrelevant and immaterial, the Court need not ascertain their truth for the purposes of this Order.

Transamerica is entitled to summary judgment on Lowe's breach of contract claim.

### b. Transamerica Is Entitled to Summary Judgement on Lowe's Punitive Damages Claim.

Lowe asserts she is entitled to punitive damages as the result of the emotional distress Transamerica caused her by allegedly breaching the Policy. According to O.C.G.A. § 51-12-5.1(b):

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

Georgia law is clear that "punitive damages are not available in breach of contract claims." *ServiceMaster Co., L.P. v. Martin*, 252 Ga. App. 751, 757 (2001). *See also* O.C.G.A. § 13-6-10 ("Unless otherwise provided by law, exemplary damages shall never be allowed in cases arising on contracts."); *Hester Enters., Inc. v. Narvais*, 198 Ga. App. 580, 582 (1991) ("[P]unitive damages are not recoverable for breach of contract, even though the breach may be in bad faith.").

Moreover, Georgia courts have held that "a prayer for punitive damages is not an independent cause of action." *Byrne v. Nezhat*, 261 F.3d 1075, 1093 n.34 (11th Cir. 2001) (abrogated on other grounds). *See also Massey v. Kelly, Inc.*, 742

F. Supp. 1156, 1158 (N.D. Ga. 1990) ("[T]he Georgia statute for punitive damages is not grounds for an independent cause of action."). "Instead, certain causes of action, such as intentional torts, may provide for the recovery of punitive as well as compensatory damages." *Byrne*, 261 F.3d at 1093 n.34.

Pursuant to irrefutable Georgia law, Lowe cannot maintain her punitive damages claim because it is premised on an alleged breach of contract. Lowe has not otherwise alleged any tortious acts by Transamerica. Regardless, Lowe cannot assert her punitive damages claim as a stand-alone cause of action. Therefore, Transamerica is entitled to summary judgment on Lowe's punitive damages claim.

### c. Lowe Is Not Entitled to Partial Summary Judgment.

In light of the above, Lowe's motion for summary judgment on her breach of contract claim must be denied. The Court notes that Lowe's motion raises a number of additional claims for the first time in this litigation. These include allegations that Transamerica: (1) impermissibly increased the monthly policy expense in her Policy; (2) incorrectly calculated the MDR as if Lowe were still a smoker, not a non-smoker; (3) converted a vanishing premium policy to an

increasing premium policy without Lowe's consent; (4) violated O.C.G.A. § 16-5-102 for exploiting an elderly person; and (5) acted in bad faith.[57]

Irrespective of their truth, the Court will not consider these claims because Lowe cannot raise them for the first in her motion for summary judgment. The Eleventh Circuit has held that the summary judgment stage "does not afford plaintiffs with an opportunity to raise new claims." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004). *See also Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) ("[Plaintiff] was not entitled to raise [a new claim] in the midst of summary judgment."). Instead, the proper procedure "to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." *Gilmour*, 382 F.3d at 1315. Lowe failed to follow this procedure. As a result, these additional claims are not properly before the Court and will not be considered.

## V. CONCLUSION

Based on the foregoing, Transamerica's motion for summary judgment [ECF 32] is **GRANTED** and Lowe's motion for summary judgment [ECF 39] is

---

[57] ECF 39, at 4, 8–11.

**DENIED**. The Clerk is **DIRECTED** to enter judgment in favor of Transamerica and close the case.

**SO ORDERED** this the 26th day of March 2020.

Steven D. Grimberg
United States District Court Judge